We'll hear the next case, we'll rent. May it please the Court, I'm Julia Penny Clark for Plaintiffs in the Class. Our briefs describe several paths that authorize relief for the undisputed ERISA violation in this case. I want to focus here on the simplest path, ERISA Section 502A1B, which authorizes relief, recovering benefits under the terms of the plan. The way we get there is the Supreme Court's decision in Unum v. Ward, which authorizes recovery of benefits under legally mandated terms implied into a plan by operation of law, which is exactly plaintiff's claim here, under Section A1B. I'll explain in a moment, this is a normal rule of contract interpretation, regularly applied in ERISA plans, but first I want to focus on Unum. Unum was an A1B suit for disability benefit. The plan required proofs of claim at the latest, a year and a half after the onset of disability, and made that a condition precedent to any benefit recovery. State insurance law added a mandatory term, which said the insurer must prove prejudiced to enforce that term. The Supreme Court held, in spite of what it described as the contrary term in the plan, which didn't require prejudice, that the mandatory legal term supplied the rule of decision enforceable in the A1B action. The same is true here. The plan in Section 5.4 stated that lump sum benefits would be actuarially equivalent to the accrued benefit payable at normal retirement age, but then calculated that accrued benefit using a WHPSA projection rate that was not the same as the interest crediting rate under the plan. ERISA at the time required a WHPSA projection rate that was the same as the interest crediting rate. ERISA's required WHPSA projection rate was implied by law, supplied the relevant rule of decision, using the Supreme Court's words in Unum, and is enforceable under A1B as a term of the plan. Can I ask you about that? So Amara says that you have to apply the plans as written. You can't go outside of the plan to come up with language that's not in the plan. That's the way I read it, at least. So your argument is, well, ERISA supplies that additional information, but I'm trying to figure out where is it in ERISA that says what the normal retirement age should be, like age, 65 maybe, and what the rate of return should be. That's the first part of the WHPSA calculation. Where do you look to get those two factors specifically that is not in the plan? And you say ERISA requires it, provides it. I can't figure out where in ERISA it would provide such detail. I'll answer both of your questions in reverse order, actually. The normal retirement age and the accrual that the accrued, that any lump sum benefit must be the actuarial equivalent of the accrued benefit under the plan, come from Sections 203 and 204 of ERISA, which are vesting slash non-forfeitability and the accrued benefit standards. They have been interpreted by the governmental authorities that have the statutory right to interpret the plan, namely the IRS, in a series of rulings that were in effect at the time that these claims arose. The second part, actually it was the first part of your question, which was what did Amara say. Amara cited UNAM for the proposition that a court should interpret a plan in light of governing law. And it said that the court should look outside the plan's written language to determine what the terms of the plan are. In citing UNAM for that proposition. It says to determine what the language means, what the terms mean. It said both of those. So the concern is if the term isn't there, the suggestion is you can't reform the contract to fill in the term. What the court actually said was A1B allows a court to look outside the plan's written language in deciding what those terms are, i.e., what the language means. Then it cites UNAM. Right. Now, in UNAM you can look to decide what the terms mean, but you can't go outside to replace those terms even if they turn out to be illegal. I would disagree, Judge Chin, because the court then immediately cited UNAM. See UNAM v. Ward. And in UNAM there was only one source outside the plan's written language that the court looked to, and that was the governing law. So this citation necessarily endorses the holding of UNAM, which is that the first step in determining what a plan means is to determine what the terms are. And if there is a governing legal standard, you must look outside to find that legal standard, to know what are the terms of the plan, and then you can decide what they mean. What's the legal standard? The legal standard is, at issue here, what is the normal retirement age, and that the WHPSA projection rate must be the same as the interest crediting rate in this kind of plan. If it's unclear or ambiguous, what do you do? In other words, if a plan is truly missing a term and then you go beyond that or outside that and there's ambiguity, then what does the court do? Certainly the court, as Amara endorsed, looks first to the outside source of governing law, imports that term into the plan, and then if it's ambiguous, you construe the terms together to decide what do they mean. But if, and this is where the district court tripped up here, if there is a contrary term which cannot be reconciled with the governing law, which was the case in Unum, then it is the law that supplies the relevant rule of decision. Now, the, as I stated a moment ago, that's a longstanding principle of contract interpretation. It goes, the Supreme Court in the Norfolk Railway case said laws that subsist at the time and place of the making of a contract enter into and form a part of it as fully as if they had been expressed in the contract. Williston goes into this at great length in Chapter 30. Where does the court get the rate of return? If you're the district judge on remand in this case, what do you say the rate of return for the first stage of the whipsaw calculation is? The other whipsaw cases have said that in a case, a plan like this, where the employer has allowed a variable rate of return, that the right approach is to use a rolling average for some significant number of years leading up to the point where the cash-out takes place, so that that would be the source. It has to be a good-faith estimate of the average that the variable rate will produce, but it can use a rolling 10 years, 20 years, leading up to the date that the cash-out takes place. I think it's really important to note that the Supreme Court in Central Laborers v. Hines in addressing the vesting standards, which are the same sections at issue here, said that ERISA's vesting requirement, and I'm quoting, adds a mandatory term to all retirement packages that a company might offer. And that phrasing is important. It's not just that ERISA requires it as some external standard. ERISA adds that term into the plan document as if it were a term of the plan, which is enforceable under A1B, as the court in Unum told us. I'd like to ask you some questions about the waiver and forfeiture issue. Yes, Your Honor. And correct me if I'm misunderstanding. I take your argument to be that PricewaterhouseCoopers did not raise the arguments until it filed the motion for judgment on the pleading after the interlocutory decision. So when we granted the interlocutory review at the motion-to-dismiss stage, could PricewaterhouseCoopers have sought reversal based on the argument that it is raising now? Absolutely. Absolutely. They had mentioned this current argument to the district court before the first appeal. But in the petition for interlocutory appeal, they specifically said to this court, if their five-year normal retirement age was void, the district court was going to have to do exactly what they now say it had no authority to do. And you'll find that argument in the appendix at pages 806 and 807. They said the district court would have to find a valid WHPSA projection rate and would have to order benefit calculations under that rate. Wouldn't we have remanded or dismissed the interlocutory appeal because there were other controlling questions that the district court had not resolved? That certainly would have been a pathway open to this court. But one thing for sure is that it would not have addressed the question whether the five-year normal retirement age was void without first, if it had known that there was an upstream question like this, whether the court even had the authority to look at that issue. This is the same kind of, the very kind of piecemeal appeals that this Court's mandate waiver rule is designed to avoid, and part of the reason why this case is now 13 years old and has not been resolved completely. I mean, these people are still waiting for a remedy for undoubted illegal conduct. And that Price Waterhouse says they cannot get a remedy for it. What's the status of the claims relating to the summary plan descriptions? Those are no longer in the case. Okay. Thank you. Thank you, Your Honor. Thank you. May it please the Court, Brendan Ballard, on behalf of the Secretary of Labor, as amicus supporting plaintiff appellants. This Court has already determined that the PWC plan violates ERISA. The only remaining question is whether ERISA grants a remedy for this violation. The Secretary of Labor believes it does. In its 2015 decision in this case, this Court relied on its prior decision in Esden v. Bank of Boston and noted that ERISA does not leave plans free to choose their own methodology for determining the actuarial equivalent of the accrued benefit, also known as the whipsaw benefit. If plans were free to choose their own assumptions and methodology, they could effectively eviscerate the protections provided by ERISA's requirement of actuarial equivalents. Is Esden good law still after Amara? We believe it's still good law. How do they coexist? So in Amara, the Court said that Section 502A1B allows the Court to look outside the plan's written language to determine what the plan's terms are. And so here, you look at ERISA, and specifically it's these minimum requirements, it's the vesting and accrual benefits to determine what the plan's terms are. And so the terms that we're talking about, the normal retirement age and the projection rate, those are void. Because they violate ERISA, they're void and they've always been void. And so what supplants them are ERISA's requirements. So in that way, we think that they coexist. What are those requirements about normal retirement age and the first stage of the whipsaw calculation, the percentage you should apply? So ERISA sets minimum standards, but there would be no way to have minimum standards if it didn't override below minimum plan content, plan terms. So, I mean, yes, in the first instance, as Din said, it will be for the Court to say what the exact calculation, what the projection rate should be. The Court would have the discretion to, you know, defer to the plan administrator. But nonetheless, it's still ERISA's mandatory terms that are part of the plan. So as you point out quite correctly, that ERISA provides a minimum standard. But let's say that the plan terms provide a lot of leeway in terms of drafting the plan's terms. What does the Court do in that circumstance? Well, as long as the plan's terms provided for benefits that were consistent with ERISA, that were above the minimum standards, that wouldn't violate ERISA. So there would be no problem. Let's say the plan's terms are illegal as written, but that ERISA does not provide a definite mandatory term. How can the Court proceed under 502A1B? It's similar to the Unum case, where basically what the Court said is that the state law that conflicted with the plan term overrode what the plan term was. And so here, you know, in that case, it wasn't the exact calculation of benefits. It basically just said that the prejudice provision would have had to have been read in before you could bar the claim based on the failure to file it on time. So here, ERISA creates a mandatory minimum, and that is a mandatory plan term. I mean, that's what the Supreme Court said in Hines, that Section 203A makes these mandatory minimums part of the plan. So your brief concentrates on 502A1B. From the Department's perspective, assuming just hypothetically if this panel were to reverse, what would the differences be between relying on that provision and 502A3? So, I mean, first of all, 502A3 is a catch-all provision, as the Supreme Court said in Verity, which is why we in the first instance relied on A1B. The Department doesn't have a preference, and we think that a remedy is proper under either avenue. The difference is that under 502A1B, we are basically saying that the plan's terms are void ab initio, the terms that violate ERISA are void ab initio, whereas under 502A3, essentially what you would do would be a two-step process, where the court would go ahead and declare those terms void, and then the second step would be to issue an injunction ordering the plan administrator to re-adjudicate plaintiff's claims to benefits using a methodology that abides by ERISA's requirements. And then any monetary benefits that result from that would be the natural consequence of that declaratory and adjunctive relief. So it wouldn't be a claim, like AMARA, which AMARA allows, it wouldn't be a claim for benefits under the plan because you would not be reading them as plan terms. It's just a different interpretation, but it gets to the same result, which AMARA said. Would there be a difference in the amount of benefits if you went under one versus the other? You know, I don't know. And that's sort of the point of this. This is not a case like Great West where you have a certain claim to damages that then the court would award. This is ordering a re-adjudication of benefits based on a new methodology, a methodology that abides by ERISA. So I don't know what those benefits would look like. Okay. Thank you. Thank you. May it please the Court. Daniel Tomash for Defendant Appelee's Price Waterhouse Coopers. Your Honor, it's slightly odd to hear the government, the Secretary of Labor, talk about a claim under A-1B. The statute divides up the terms of the plan claims from enforcing the statute claims. A-5 specifically gives the Secretary the right to enforce the claims. But if you look at A-5, A-5 is virtually identical to A-3, except A-3 allows enforcement of the statute or the plan in equity, whereas A-5 only allows enforcement of the statute. There is a difference between enforcing the statute and enforcing the plan. Amara speaks directly to that difference. And I want to go straight to Amara and to Unum. Amara did say that you can look outside the plan's written language in deciding what the terms are, i.e., what the language means. But, of course, the next sentence not read to the Court states, but we have found nothing suggesting the provision authorizes a court to alter those terms, at least not in the present circumstances where that change, akin to reform of contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy.  That's what A-1B requires. Look at the terms as written. Let me give you this hypothetical. Section 1053A of Title 29, as you are aware, ERISA says, and I quote, each pension plan shall provide that an employee's right to his normal retirement benefit is non-forfeitable upon the attainment of normal retirement age. If a plan says the opposite, how should we decide a case brought to recover benefits due under the terms of the plan? Aren't we required, arguably, to interpret the plan to contain the terms that ERISA says they shall contain? I think it very much differs. It's depending on whether you are bringing an A-1B case or an A-3 case. So if you wanted to, under A-3, A-3 allows a participant to go in and to seek an injunction to enforce the terms of the statute. And I think that's what that would be doing. The statute gives you a certain right. The plan doesn't. And you would ask for a declaratory judgment that the plan be changed or at least a declaratory judgment to prohibit the company from failing to pay benefits based on that interpretation. So Reformation is available under subsection A-3? No, it is not. Reformation is ‑‑ let me ‑‑ I spoke too soon, Your Honor. Reformation is available under A-3 if the conditions preceding to Reformation have been shown. Injunction is also available, and again, you have to show the conditions for an injunction. Now, Reformation, this Court has said time and again, requires unilateral mistake and fraud or mutual mistake, neither of which is at issue in this case. There's not even an allegation of fraud. Fraud was conceded overtly at oral argument on the motion before Judge Etkin. There is no fraud. There is no mutual mistake. Reformation is out. Reformation is ‑‑ sort of changes the contract from inception. You know, if you have rescission, the contract doesn't exist. If you have Reformation, you treat the contract as always having been read a certain way or written a certain way because that was the intent of the parties. That's not here. Now, you can have an injunction where ‑‑ Is there anything in the text in A-3 that leads you to that? The case law is very clear on these points, Your Honor. Specifically, the case law that Reformation ‑‑ I mean, A-3 case law says that you cannot get Reformation where you don't have ‑‑ where you haven't satisfied the conditions of Reformation. And the Great West case, of course, is paramount in that. Of course, Great West said an injunction to compel payment of money past due under a contract or specific performance of a past due monetary obligation was not typically available in equity. That's what ‑‑ that's what this case is about. This is a ‑‑ Even if you can't have ‑‑ even if you don't have fraud or mutual mistake here, what about Reformation for ‑‑ for terms violative of ERISA? I mean, haven't we held ‑‑ haven't we held that that is a basis for Reformation? No. The courts do not ‑‑ have not held that a court in equity, which is the test, a court in equity would not typically hold that a contract can be reformed based on a statutory violation. What about our decision in NECUS versus Oxford Health? NECUS absolutely did not reform any plan. There was no Reformation in NECUS. And, indeed, what NECUS said ‑‑ Did we acknowledge that Reformation was possible for when there was a violation of ERISA? The words or terms violative of ERISA show up in the NECUS case. And if you go to the next page to the ending of the decision, the Court says, notwithstanding that someone was asking for Reformation, what they really wanted here was money damages. That is a nakedly contractual, nakedly legal remedy. And in NECUS, they dismissed the claim, finding it was legal and not entitled to Reformation. The position is, even though there's a violation here, there's no remedy? There would be a remedy if there were current plan members. Is there a remedy? There's no remedy for these plaintiffs. There's not. And that is what this is about. This is about whether Congress provided a remedy. Congress provided remedies in a very detailed set of 11 subsections in 502A. They provided remedies to participants and beneficiaries who didn't get what the plan promised them. That's not this case. These people got what the plan promised them, and, Your Honor, they got what the SPD said that they would get. There was never any doubt. Why were WIPSA calculations ended in 2006? What was the purpose behind that? The Pension Protection Act of 2006 indicates expressly that in a cash balance situation, if someone takes a lump sum, it shall not violate ERISA to take a lump sum. It's a cash balance. It ratified the behavior. Why did Congress do that? I think Congress did that because the IRS had gone completely off the reservation in trying to claim that people could remove their money out of the plan but were nevertheless entitled to future interest credits as if the money was left in the plan. I think they went to Congress in 2006 changed a bad IRS interpretation that was in Notice 96-8. And Congress made clear that this is not required. That's why the notion here of an injunction or a reformation makes no sense. Think of what they're asking to do. The injunction they want to do would ask this Court to order PwC to make a change to a pension plan that no longer exists in order to conform to a statutory provision that no longer exists. No one benefits by this in any way other than the payment of money, the fiction of an injunction or a reformation to allow the payment of damages for a past due debt. That's all this is. This Court has set forth the standard for a sham injunction. And the standard that it set forth in the United Collections Bureau case, in Hecht v. United Collections Bureau, that standard is if you take away money, if money is not available, would anybody actually sue for an injunction? And you could ask the same question, would they sue for a reformation? Would anyone do that if money wasn't available? The answer is of course not, because they don't have the — no one is affected by the plan, and frankly, if they were still in the plan, the PPA says what we are doing is absolutely legal. They are asking to go back. Now, if our plan said that they were supposed to get certain benefits and they didn't get those benefits, they could bring a claim under A1B, and as long as they did so within the statute of limitations, the PPA would not have affected that. The PPA didn't absolve, you know, a past claim that was for under the plan, but the PPA does deal with the situation of whether, looking forward, there is any obligation to make a lump sum payment in anything more than the amount of the account balance, and PPA says no, there isn't. And so here, what they are trying to do is get money damages, but they know they can't get money damages, because Amara makes that clear. Amara tells us money damages are for the terms of the plan, and that's not what they have. So they need to change the terms of the plan. If you need to change the terms of the plan, you can't go under A1B. You have to go under A3. But when you go under A3, it isn't enough to say I want to change the terms of the plan. You have to look at the essence of the relief. What do they really want? In NECUS, in Great West, they wrapped their request in equitable language, but what they wanted was money. That's what this is about. And they can't get that because equity, a premerger court of equity would not typically grant an injunction and would not typically reform a contract to provide money based on a statutory violation. And that's what they have. They're caught between these two. Congress did not provide the same remedy for enforcing a statute for the past participants as they want. Congress just hasn't given them this remedy. It would seem broadly inequitable that in our prior decision we said that five-year term is not valid because it doesn't reflect the normal retirement age. Right. Five years. And then so what? So people don't get any more money. It seems broadly inequitable, doesn't it? Just to be clear, two answers, Your Honor. First, the question of broadly inequitable doesn't really come into these cases under the case law, including this Court's decision in Central States in 2014, which said we're dealing with a highly reticulated statute. We can't rest on general principles of equity. We have to look and see, did Congress provide a specific remedy? Did it endorse a specific remedy? So in general, you don't look in that direction. But what is important here, to be clear, is there is more here than normal retirement age. In the first decision, the normal retirement age was indicated that it can't be five years of service. That then would indicate that these individuals, or at least many of them, had not yet reached normal retirement age. Now, if you didn't reach normal retirement age at that time, you were entitled to a whipsaw calculation, not necessarily a payment, but a calculation to see how the interest rates matched up. We, our plan, of course, said you only get a lump sum if you've reached normal retirement age. So they want to go back in history, but they don't want us to look at that one provision that says they don't even get a lump sum. They want to say because the normal retirement age has changed, I get another shot at my distribution. And even if that's true, the plan tells you how to make that lump sum calculation. It tells you to project forward using the 30-year Treasury security rate. It says that at paragraph, at section 2.16 of the plan. There is no ambiguity. That's what Judge Atkin found. The projection rate here is out at the 30-year Treasury rate. The discount rate, by statute, is back at the 30-year rate. It's a wash. So even if the normal retirement age is changed and they're entitled to a payment or a calculation, when you do that calculation, it turns out to be a wash. And there's no dispute about that. And so what their problem is — Can I move you on to something? Yes. Yes. Waiver and forfeiture. In the appendix on 563, counsel concedes, and this is on the motion, on your motion for judgment on the pleadings. Counsel concedes, and I quote, that it could have, and I'm quoting, it could have made this motion by way of a 12B6 at the inception of the case. That was in 2006, the inception of this case. Is it your view that the district court had no discretion to say that you had forfeited the argument by waiting for so long? I don't mean you personally, but — It would have been an abuse of discretion to say that we had forfeited the argument. Yes, Your Honor. And the court, of course, didn't exercise its discretion that way, and there's certainly no abuse of discretion in finding we didn't forfeit it. But I do believe it would have been an abuse to find we forfeited it because it would be contrary to law. I mean, the Federal rules of civil procedure are very specific on this. You do not have to bring one omnibus 12B6 motion, and that's what this is in effect, failure to state a claim upon which relief can be granted. Rule 12 — One of the factors to be considered, as you know, in granting an interlocutory appeal is whether doing so, and I'm quoting Wood from the statute, 28 U.S.C. 1292B, would materially advance the ultimate termination of the litigation. And it's hard to say that that materially advanced the status of the termination of litigation when, 12 years later, after the case commences, there is no further consideration of whether the case is terminated. And so I think that's a, a new argument is made. With all due respect, Mr. Chief Judge, I disagree. The standard on interlocutory review is whether there's a question of controlling law, and a question of controlling law exists where, if the decision of the district court is reversed, then it will terminate the action, or at least materially advance towards termination of the action, if there's a reversal. Here it was stipulated at the time of the interlocutory appeal that if this Court were to have found that the normal retirement age in the plan was, in fact, legal, which was our position, if the Court had agreed with the Seventh and the Fourth Circuit, who examined the exact same question and came to the result opposite to this Court, if the Court had agreed with those prior courts that the term was terminated over at that point. That is why the Judge Etkin certified it. That is, I believe, why this Court accepted it, because the standard is, if it's reversed, will it materially advance it? If you have an interlocutory appeal and you lose the appeal, the case proceeds forward. We had successive and markedly different 12b-6 motions. Rule 12h tells us that we do not waive a 12b-6 motion by not making it. All we have to do is make it in the form of a Rule 12c motion after the pleadings are closed and in a timely fashion. Timely under the Federal rules is very specific. It is set forth in the rule. And to be timely, it has to be something that does not delay the trial of the case. In this situation, fact discovery was ongoing. Experts had not even been identified, much less had expert discovery begun. There had been no trial date set. There had been no pretrial conference date set. We were early in the case, discovery-wise, and the Court found that we, that the motion was timely. Now, mind you, if we had been too close to trial to make the motion and we couldn't make it by way of a 12c motion, we could have reserved it and made it at trial. Our argument here is that as a matter of law, there is no statutory endorsement that Congress has provided for this type of plaintiff to bring this type of claim. That claim is never waived. At least it's not waived if we, as well, as long as we present it at trial under Rule 50, we could have done that at the halftime point at trial. We didn't wait until then. On remand, or as this case was sent back after interlocutory appeal, we looked at the situation and we then realized that they seemed to be claiming that they weren't proceeding forward in equity where we thought that they were. They were trying to bring a motion under A-1B. A-1B is flatly prohibited under O'Mara. And we went down that road. I would like to touch on Unum, because I think Unum has been. Roberts. Could you wrap up, please, because you're over your time. Oh, I am sorry, Your Honor. I didn't see that, and I'm — if Your Honor would like to hear about Unum. If you have a summary, two sentences, go ahead. Your Honor, the — this — if this is viewed as an A-1B case, it can only come out for plaintiffs if you change the terms of the plan. The plan has a projection rate. They have no relief under that. They want to change the terms, and they cannot do that under A-1B. Thank you, Your Honor. Thank you. I'm going to begin by addressing what Mr. Tomasz just said. There is no need here, and this addresses also the questions about O'Mara. There is no need here to alter or to change the terms of the plan. All that the court has to do is to recognize that under the longstanding rule of contract interpretation, the governing law has always been a term of this plan, and it is a matter of interpretation. As used in Williston, the entire Chapter 30 of Williston is about interpretation of contracts, and this longstanding common law rule that contracts are deemed to imply, as a matter of law, the governing terms of law, is part of interpretation. So that answers the question about whether O'Mara, by using the term interpretation, is necessarily talking about something other than finding a governing term of law outside the plan that must be implied by law and deemed a term of the plan for purposes of A-1B. Everything that Mr. Tomasz said about reformation and about injunctions is really unnecessary under A-1B because it's completely beside the point, but I want to address his insistence that this Court has never said that a plan can be reformed for violation of the law. In the McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, which is cited in the briefs, this Court affirmed an order of the district court which declared a break-in service provision invalid under the accrual rules and ordered the defendants to amend the plan and to revise the benefit payments. The definite benefit standards, which Judge Droney had asked about, they're laid out pretty clearly in the appendix in the IRS TAM. This is appendix pages 1194 to 95. And as far as the issue about mandate waiver, all of the rules about the timing for raising issues in the district court are totally beside the point. It's not a question of whether if there had never been an appeal, it would have been timely for them to bring a 12C motion. The question is whether having brought an appeal, having omitted the argument that they're now making, which would have made that appeal basically a moot question, unnecessary to address the question at all, did they waive the issue of whether the district court had authority to provide any remedy to these plaintiffs. And it's important to understand this is not just a whipsaw issue. What this says is that a defendant can have a plan that deliberately violates the law, that deliberately violates the vesting standards that Judge Katzmann asked about. And it can say when it's found out and caught, oh, we'll amend the plan prospectively, we'll take care of all the current participants, they won't have a claim. And then they'll say everybody who previously received a payment under this plan that was less than it was required to be by law has no remedy. We don't have to provide any relief to the people who were shorted during the period of time that our unlawful term was in the plan. No court other than the district court below has accepted that radical idea, and this court should reverse it.